UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| GREENFIELD COMMERCIAL CREDIT, L.L.C. | CIVIL ACTION |
| VERSUS | NO. 03-3391 |
| CATLETTSBURG REFINING, L.L.C., ET AL. | SECTION "K"(2) |

## *ORDER AND OPINION*

Before the Court are plaintiff Greenfield Commercial Credit, L.L.C.'s motion for partial summary judgment and the motion for summary judgment filed on behalf of defendants Catlettsburg Refining, L.L.C. and Jacobs Engineering Group, Inc. Having reviewed the pleadings, memoranda, and relevant law, and having considered the oral arguments of the parties, the Court, for the reasons assigned below, denies defendants' motion for summary judgment and grants plaintiff's motion to the extent that it seeks summary judgment on the issue that it provided Jacobs with sufficient notice Pipeworks, Inc.'s assignment of its accounts receivables to Greenfield.

## *BACKGROUND*

Catlettsburg Refining, L.L.C. ("Catlettsburg") hired Jacobs Engineering Group, Inc. ("Jacobs") to act as its agent to obtain material and equipment for upgrades being made to its refinery in Kentucky. Acting as agent for Catlettsburg, Jacobs awarded several contracts to Pipeworks, Inc. ("Pipeworks") to provide pipe spools for various projects at the Catlettsburg refinery. After Pipeworks generated invoices for work and materials, it provided the invoices to Jacobs. Jacobs, after verifying that the invoices were accurate or, if necessary, making corrections to the invoices, forwarded the invoices to Catlettsburg for payment. Only after

Catlettsburg paid Jacobs the verified amount due would Jacobs pay Pipeworks for the invoice.

While work on the Catlettsburg upgrade projects was ongoing, Jacobs subcontracted with Pipeworks to provide similar services for a project for Valero Refining Texas, L.P.

On May 15, 2003, Pipeworks entered into a factoring agreement with Greenfield Commercial Credit, L.L.C. ("Greenfield") by which Pipeworks assigned its accounts receivable to Greenfield. That same day, acting on behalf of Pipeworks, Greenfield mailed to Jacobs a notice stating:

> In order to accommodate the growth of our business, we have retained the services of Greenfield Commercial Credit, L.L.C. to fund and manage <u>our accounts receivable.</u>  This arrangement includes our assignment of payments on <u>our accounts</u> to Greenfield Commercial Credit, L.L.C. under the Uniform Commercial Code laws. . . .
>
> PAYMENTS ON <u>ALL INVOICES</u> FROM OUR COMPANY ARE TO BE MADE PAYABLE AND MAILED DIRECTLY TO:
>
> GREENFIELD COMMERCIAL CREDIT, L.L.C.
> for  (<u>Pipeworks Reserve, Inc.)</u>
> . . . .
>
> This instruction to change the payee on <u>our accounts</u> is effective immediately. . . ..
>
> If you have any questions concerning this account, please contact:
>
> Greenfield Commercial Credit, L.L.C.
> (248) 267-6777

(emphasis added).  Representatives of Pipeworks Reserve, Inc.[1] and Greenfield signed the notice.

Wiring instructions on the face of the notice states in pertinent part:

> Wiring Instructions:  Standard Federal Bank
> RE:  Pipeworks, Inc.

---

[1] the parties acknowledged during the December 13, 2006 hearing on these motions that Pipeworks Reserve, Inc. and Pipeworks, Inc, are related complanies.

On October 6, 2003, Greenfield sent Jacobs, as Catlettsburg's agent, a letter directing it to make payment of the Pipeworks, Inc. invoices to Greenfield and enclosing a list of the outstanding invoices totaling $2,253,326.68. On October 15, 2003, Greenfield again wrote Jacobs as Catlettsburg's agent, advising Jacobs that based on the factoring agreement there was a past due obligation of $2,082,223.42 for Pipeworks' invoices. Jacobs responded stating that it had not entered into any contractual agreement with either Greenfield or Pipeworks Reserve, Inc.

Thereafter Greenfield filed suit against Catlettsburg and Jacobs seeking payment of $2,253,326.68 for invoices from Pipeworks relating to the work at the Catlettsburg refinery. Greenfield also seeks attorney fees pursuant to La. Rev. Stat. 9:2781 contending that this is a suit on an open account.

## *LAW*

The Federal Rules of Civil Procedure provide that summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Stults v. Conoco, Inc.*, 76 F.3d 651, 655-56 (5th Cir.1996) (*citing Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912-13 (5th Cir.1992) *(quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)), cert. denied, 506 U.S. 832 (1992)). When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. The nonmoving party must come forward with "specific

facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U .S. 574, 587 (1986) (emphasis supplied); *Tubacex, Inc. v. M/V RISAN*, 45 F.3d 951, 954 (5th Cir.1995).

Thus, where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S. at 588. Finally, the Court notes that substantive law determines the materiality of facts and only "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Uniform Commercial Code ("U.C.C."), as adopted in Louisiana, provides in pertinent part:

> **(a) Discharge of account debtor; effect of notification.** Subject to [certain provisions not applicable here] an account debtor on an account, . . . may discharge its obligation by paying the assignor until, but not after, the account debtor receives a notification, authenticated by the assignor or the assignee, that the amount due or to become due has been assigned and that the payment is to be made to the assignee. After receipt of the notification, the account debtor may discharge its obligation by paying the assignee and may not discharge the obligation by paying the assignor.
> (b) When notification ineffective. **Subject to [**a section not at issue here] **notification is ineffective under subsection (a):**
>   (1) if it does not reasonably identify the rights assigned; . . . .

La. Rev. Stat. 10:9-406. *See also* La. Rev. Stat. 10:9-406(c) Proof of Assignment.

It is well established that an account debtor who fails to comply with a valid assignment and improperly pays the assignor may be liable to the assignee for the amount of the improper payment. *Estate of Haas v. Metro-Goldwyn-Mayer, Inc.*, 617 F.2d 1136, 1139 (5th Cir. 1980); *Federal Deposit Insurance Corporation v. Registry Hotel Corporation*, 639 F.Supp. 812, 814 (N.D. Tex. 1986). The assignee bears the burden of proving that the account debtor received proper notice of the

4

assignment. *Bank of Salt Lake v. The Corporation of the President of the Church of Jesus Christ of Latter-Day Saints*, 534 P.2d 887, 891 (Utah 1975).

## *ANALYSIS*

Catlettsburg and Jacobs sole challenge to the validity of the assignment is that Greenfield's notice of assignment failed to reasonably identify the rights assigned by identifying the assignor as Pipeworks, Reserve, Inc., with which defendants had no contractual relationship, rather than Pipeworks, Inc. and by failing to identify the invoices assigned to Greenfield.

The notice required by the U.C.C. "embraces those things that a reasonably diligent inquiry and exercise of the information at hand *would have* disclosed." *Robert Parker's Truck and Trailer Repair*, *Inc.,* 722 S.W.2d 45, 48 (Tex. App. 1st Cir. 1986). The fact that the notice of assignment identifies the assignor as Pipeworks Reserve, Inc., rather than Pipeworks, Inc., does not mandate a conclusion that Jacobs did not receive proper notice of the assignment.

A notice of assignment must "reasonably identify" the rights assigned. "If an account debtor has doubt as to the adequacy of a notification, it may not be safe in disregarding the notification unless it notifies the assignee with reasonable promptness as to the respects in which the account debtor considers the notification defective." La. Rev. Stat. 10:9-406, Uniform Commercial Code Comment 3. Comment 3 makes it clear that when an account debtor, such as Jacobs, doubts the adequacy of the notice of assignment, the onus is on it to contact the assignee - not the assignor - concerning the alleged insufficiency of the notice. Additionally, Greenfield's notice letter specifically invited Jacobs to contact it "[i]f you have any questions concerning this account. . ..." Jacobs chose to ignore that request and never contacted Greenfield concerning the assignment. Had Jacobs contacted Greenfield, Jacobs would have learned that both Pipeworks, Inc.

and Pipeworks Reserve, Inc. executed the factoring agreement. Jacobs never contacted Greenfield to request a copy of the assignment. Instead, Jacobs turned to Pipeworks for clarification, and simply accepted its representation that the notice was a mistake. No further inquiry was made by Jacobs, and that failure is fatal to defendant's contention.

Defendant contends that the notice of assignment is ineffective because the notice incorrectly stated the corporate name of the assignor. In support of this contention defendants rely on several cases in which a notice of assignment was held to be insufficient because the notice incorrectly stated the corporate name of the assignor.[2] Those cases are inapposite. In each of those cases the dispositive issue was whether the challenged notice provided notice of a security interest to a third party relying upon the public records. Here there is no issue as to whether the notice was sufficient to notify a third party searching the public records of the assignment; notice to Jacobs is the only issue.

Moreover, Jacobs's contention that the notice failed to reasonably identify the assignor is undermined by the fact that the wiring instructions included in the notice specifically referenced Pipeworks, Inc., thereby providing Jacobs with a frame of reference to identify the rights assigned. Additionally, it is significant that upon receiving the notice Jacobs contacted Pipeworks, Inc. concerning the assignment. That contact belies defendant's contention that the notice of assignment failed to reasonably identify the assignor.

Citing *Warrington v. Dawson*, 798 F.2d 1533 (5th Cir. 1986), Catlettsburg and Jacobs contend that the notice was deficient because it failed to indicate what project account (Catlettsburg

---

[2]*In Re Raymond F. Sargent, Inc.,* 1970 WL 12639 (Bankr. D. Me 1970); *District of Columbia v. Thomas Funding Corporation*, 593 A.2d 1030 (D.C. App. 1991); *Reisdorf Brothers, Inc. v. Clinton Corn Processing Company*, 130 A.D.2d 951 (N.Y. 1987).

or Valero) the notice applied to, and if it applied to a Catlettsburg project, which of several Catlettsburg projects was involved. Under the facts of this case, the failure to specifically identify the project account does not render the notice insufficient. In *Warrington* the notice of assignment letter stated "you will make all checks payable on **this account** to [assignor and assignee] in compliance with our lien on **this account**." *Id.* at 1534 (emphasis added). In concluding that the content of the notification was insufficient, the Fifth Circuit relied upon the fact that the account debtor had four separate corporate accounts with the assignor and that the reference to "this account" made it appear as if the account debtor individually had an account with the assignor.

The facts of this case are substantially different. The notice provided by Greenfield states that the assignment applies to "our accounts." The "our accounts" language is consistent with an assignment of all of Pipeworks's accounts with Jacobs. Where an assignor has multiple accounts with an account debtor, the assignment of "this account" can only be construed to refer to only a single, unspecified account, which necessarily creates uncertainty as to what rights have been assigned. There is no uncertainty however concerning the rights assigned where, as here, an assignor having multiple accounts with an account debtor assigns "our accounts." The assignment of "our accounts" necessarily includes all accounts, thereby eliminating any uncertainty as to the accounts assigned. Moreover, as noted herein above, if Jacobs had doubts concerning the rights assigned. it had a responsibility to contact the assignee for clarification. See La. Rev. Stat. 10:9-406, Uniform Commercial Code Comment 3.

That same reasoning applies in concluding that the notice is not deficient because it fails to identify with particularity the invoices to be paid to Greenfield. The notice of assignment states that payments on "ALL INVOICES" are to be made payable and mailed to Greenfield. The

reference to "ALL INVOICES" includes every invoice on every Pipeworks project that Jacobs was obligated to pay. This case is analogous to *The Hamilton Group (Delaware), Inc. v. Federal Home Loan Bank of New York*, 1 A.D.3d 973 (N.Y. 2003) in which the court held that a "Blanket Notice of Payment Redirection" letter advising the Federal Home Loan Bank of New York to pay "all current and future amounts owed by you" provided sufficient notice to place Federal on notice of the assignment. The court held that "[i]f Federal had any doubt whether the payment had been assigned or concerning the proper payee . . ., it should have contacted [the assignee] for proof of the assignment with reasonable promptness." *Id.* at 974. Again, if Jacobs had any doubts about the meaning of "ALL INVOICES" it had the obligation to contact Greenfield concerning the scope of the assignment.

Having concluded that the notice of assignment satisfies the requirements of La. Rev. Stat. 10:9-406, the Court now turns to the issue of whether the business dealing between Jacobs and Pipeworks constitute an open account pursuant to La. Rev. Stat. 9:2781, thereby entitling Greenfield to attorneys fees. Defendants contend that the open account statute does not apply because the agreement between the parties constitutes a construction account, not an open account.

The Louisiana open account statute provides that:

> When any person fails to pay an open account within thirty days after the claimant sends written demand therefor correctly setting forth the amount owed, that person shall be liable to the claimant for reasonable attorney fees for the prosecution and collection of such claim when judgment on the claim is rendered in favor of the claimant.

La. Rev. Stat. 9:2871 A. The statute defines "open account" to include " any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not at the time of the contracting the parties expected future transactions." La. Rev. Stat.

9:2781 D.

The party seeking a judgment under the open account statute has the burden of proving the open account contract. *Dixie Machine Welding & Metal Workers, Inc. v. Gulf States Marine Technical Bureau*, 692 So.2d 1167, 1169 (La. App. 4th Cir. 1997). It is well established that an open account is analogous to a credit account. *Id.*; *Tyler v. Haynes,* 760 So.2d 559, 562 (La. App. 3rd Cir. 2000). In determining whether a course of dealings constitutes an open account, courts have consistently examined the following factors:

- whether there were other business transactions between the parties;
- whether a line of credit was extended by one party to the other;
- whether there are running or current dealings; and
- whether there are expectations of other dealings.

*Salley & Salley v. Stoll*, 864 So.2d 698, 704 (La. App. 5th Cir. 2003); *Dixie Machine v. Gulf States Marine Technical Bureau*, 692 So.2d at 1169.

> An open account is an account in which a line of credit is running and is open to future modification because of expectations of prospective business dealings. Services are recurrently granted over a period of time. A contract, however, is an agreement between two or more parties in which an offer is made by one of the parties and acceptance is made by the other party, thereby establishing a concurrence in understanding the terms.

*Tyler v. Haynes*, 760 So.2d at 563.

The contract for the Catlettsburg project was not the only contract between Pipeworks and Jacobs; those parties also had a contract for the Valero project. However, the parties did not have a continuous business relationship, and there is no evidence that either party anticipated future business dealings. There is also no evidence suggesting that any formal line of credit was extended.

A "meeting of the minds" is necessary to establish an open account. *Dixie Machine v. Gulf*

9

*States Marine Technical Bureau, Inc.*, 692 So.2d at 1170. The evidence does not establish "a meeting of the minds" to establish an open account. The dealings between defendants and Pipeworks constitute a construction contract. Jacobs contracted for Pipeworks to provide materials for use in specific construction project. The parties did not agree to a course of dealings over a period of time. Rather, they agreed on specific contracts for a specific project - albeit a contract and project that would take considerable time to complete. Such an agreement is a construction contract. *See Kenner Industries, Inc. v. Sewell Plastics, Inc.*, 451 So.2d 557, 560 (La. 1984). *See also Barco Projection Systems, Inc. v. Alliance Business Projects, Inc.*, 2003 WL 21355467 (E.D. La. June 6, 2003); *Freedom Alarm Service, Inc. v. Simplex Time Recorder Co.*, 1999 WL 319212 (E.D. La. May 19, 1999)). This is not a suit on an open account, consequently, Greenfield is not entitled to attorneys fees on this claim.

For the reasons stated on the record at the December 13, 2006 hearing, Greenfield's motion for partial summary judgment is denied to the extent that it seeks summary judgment regarding the quantum of damages to which it is entitled.

**IT IS HEREBY ORDERED** that the motion for partial summary judgment filed on behalf of Greenfield Commercial Credit, L.L.C. (Doc. 155) is granted to the extent that it seeks summary judgment on the issue of liability.

**IT IS FURTHER ORDERED** that the cross motion for summary judgment (Doc. 172) filed on behalf of defendants Catlettsburg Refining, L.L.C. and Jacobs Engineering Group, Inc. is denied.

New Orleans, Louisiana, this 9th day of January, 2007.

STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE